UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
ROBERT DOYLE, *Individually and on Behalf of a Class of All Others Similarly Situated*,

                Plaintiff,

-against-

COUNTY OF SUFFOLK, JAMES BURKE, *Former Police Chief*, THOMAS SPOTA, *Former District Attorney*, CHRISTOPHER MCPARTLAND, *Former Chief of the Government Corruption Bureau*, and THOMAS IACOPELLI,

                Defendants.
-----------------------------------------------------------------------X

For Online Publication Only

**ORDER**
23-CV-8871 (JMA) (SIL)

**FILED**
**CLERK**
3/28/2025 4:15 pm
**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

**AZRACK, United States District Judge:**

Plaintiff Robert Doyle brings this putative class action alleging that the wiretapping of a police officer's phone by the Suffolk County District Attorney's Office (the "SCDAO")—which intercepted the officer's communications with Plaintiff and others—violated the Federal Wiretap Act ("FWA"), 18 U.S.C. §§ 2510–2522. In addition to naming Suffolk County as a defendant, Plaintiff also brings suit against James Burke, the former Suffolk County Police Chief, Thomas Spota, the former Suffolk County District Attorney, Christopher McPartland, the former head of the SCDAO's Government Corruption Bureau, and Thomas Iacopelli, a detective in the SCDAO (collectively, the "Individual Defendants"). Defendants have all filed motions to dismiss. For the reasons stated below, the Court grants Suffolk County's motion to dismiss and denies the motions to dismiss filed by the Individual Defendants.

## I. BACKGROUND

In January 2012, Burke became the Chief of the Suffolk County Police Department. (Compl. ¶ 12.) With District Attorney Spota and the high-ranking McPartland "by his side, Burke viewed himself as untouchable and above the law." (Id. ¶ 13.) Spota, McPartland, and Burke nicknamed themselves the "Administration." (Id. ¶ 14.) The "Administration" maintained an

"enemies list" and vowed to retaliate against their enemies. (Id. ¶¶ 14–16.) The Administration's corrupt practices culminated in Burke's assault of a handcuffed suspect, Christopher Loeb. (Id. ¶ 20.) Burke, Spota, and McPartland then covered up the assault and pressured witnesses not to testify. (Id.) This cover-up eventually resulted in federal charges being brought against Burke, Spota, and McPartland. The undersigned presided over the well-publicized trial of Spota and McPartland in November and December 2019. Spota and McPartland were both convicted of conspiring with Burke to obstruct justice in connection with the cover-up of Burke's assault. Prior to their trial, Burke pled guilty, in 2016, to violating Loeb's civil rights and to conspiring to obstruct justice.

Plaintiff was a decorated Suffolk County police officer. (Compl. ¶ 18.) The officer whose phone was wiretapped is identified in the Complaint only as "Person 1." While the Complaint artfully avoids identifying "Person 1," his identity is apparent. Person 1 is John Oliva. The SCDAO's wiretapping of Oliva's phone and prosecution of Oliva was discussed during testimony at the Spota trial and in filings on the docket.

Plaintiff and Oliva were "friends." (Id. ¶¶ 28.) They were also both avowed enemies of Burke, Spota, and McPartland. (Id. ¶¶ 17, 28.) Doyle was viewed as an enemy because he was unwilling to follow their "illegal propensities and practices." (Id. ¶ 19.)

Oliva was part of a joint task force with the FBI that targeted gang members. (Id. ¶ 23.) In an attempt to "limit oversight of the federal government" and to "plug potential holes in the cover-up" of Burke's assault of Loeb, the Administration removed Oliva from the FBI task force. (Id. ¶ 24.)

It "was believed that," in response to his removal, Oliva "leaked information to Newsday delineating the resulting spike in crime." (Id. ¶ 25.) Burke, Spota, and McPartland used this as an opportunity "to create a cover story." (Id. ¶ 26.) They agreed to "feed false information" to a

2

"local magistrate in order to secure a warrant to wiretap" Oliva's phone. (Id. ¶ 26.) They "falsely" "claimed" that Oliva's conduct had threatened officer safety. (Id. ¶ 27.) "In reality, the wiretap campaign had nothing to do with officer safety, which was simply a cover story to deceive the court into issuing a wiretap warrant." (Id. ¶ 28.) According to the complaint, there was no "probable cause" for the wiretap. (Id. ¶ 41.)

The "co-conspirators had one goal among others: they wanted to discover if [Oliva] or any of his friends, including Detective Doyle, were leaking information to the press and to dig up information they could then use to discredit and/or blackmail them into silence." (Id.) Oliva's phone was tapped for "months" and Defendants listened to, and recorded, many hundreds, if not thousands, of communications, including calls between Oliva and Plaintiff. (Id.)

Spota signed the wiretap applications and he, along with Burke and McPartland, used information from the wiretap in order to gain leverage over their enemies, enforce loyalty, and further their goal of covering up Burke's assault. (Id. ¶ 30.) Iacopelli signed the affidavits in support of the wiretap application, eavesdropped on the phone calls, and relayed the content of the calls to the other defendants. (Id.) The Complaint alleges that Iacopelli "violated a variety of laws, including the obligation to minimize the scope of the eavesdropping, as well as the federal laws arising under the Wiretap Act." (Id.)

At the conclusion of the wiretapping campaign, Defendants pressured Oliva into pleading guilty to Official Misconduct under Penal Law § 195.00. (Id. ¶ 31.) Because Oliva pled guilty, the prosecution avoided "the discovery process" and was able to bury the "perjurious wiretap application that led to the criminal charges." (Id. ¶ 32.)

In 2021—after Burke's guilty plea and Spota's and McPartland's convictions at their federal trial—the SCDAO's Conviction Integrity Bureau agreed to review Oliva's convictions. (Id. ¶ 34.) In December 2021, the SCDAO consented to the vacatur of Oliva's conviction because

3

it had been secured through "outrageous government conduct." (Id. ¶ 37.) The SCDAO "'could not identify a valid basis for the wiretap.'" (Id.) In December 2021, a state court judge vacated Olivia's conviction and "acknowledge[d] that although he had heard details about the federal trial, he. . . could not fully grasp the extent of the defendants' misconduct until the motion practice he decided in December 2021." (Id. ¶ 39.)

On December 1, 2023, Plaintiff filed the instant Complaint. (Compl.) Currently pending before the Court are motions to dismiss filed by all defendants. (See ECF No. 35; ECF No. 36; ECF No. 39; ECF No. 43; ECF No. 47; ECF No. 48.)

## II.  DISCUSSION

### A.  Standard for Motions to Dismiss Pursuant Rule 12(b)(6)

To survive a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must allege sufficient facts "to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is facially plausible only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). Mere labels and legal conclusions will not suffice. Twombly, 550 U.S. at 555. In reviewing a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006).

In addition to the complaint itself, courts can also consider, on a motion to dismiss, "documents appended to the complaint or incorporated in the complaint by reference . . . matters of which judicial notice may be taken," as well as "document[s] not expressly incorporated by reference in the complaint [that are] nevertheless 'integral' to the complaint." Clark v. Hanley, 89 F.4th 78, 93 (2d Cir. 2023).

4

### B.      Suffolk County Cannot be Held Liable under the FWA

Suffolk County argues that, as a matter of law, municipalities cannot be held under the FWA for the type of violations alleged here. The Court agrees.

#### 1.      Relevant Provisions of the Federal Wiretapping Act

The FWA provides a private right of action. Section 2520 states that "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity, other than the United States, which engaged in that violation." 18 U.S.C. § 2520.

When the FWA was first enacted, § 2520 only authorized recovery against "the person" who violated the FWA. <u>Seitz v. City of Elgin</u>, 719 F.3d 654, 656 (7th Cir. 2013) (setting out the history of the FWA). In 1986, however, Congress extended the cause of action from against any "person" to against any "person or entity which engaged in" the violation. Electronic Communications Privacy Act of 1986, Pub. L. No. 99–508, § 103, 100 Stat. 1848, 1853–54; <u>see</u> <u>Seitz</u>, 719 F.3d at 656.

In 2001, the PATRIOT Act amended the statute again, adding the current language that extends liability to a "person or entity, other than the United States." USA PATRIOT Act of 2001, Pub. L. No. 107–56, § 223(a)(1), 115 Stat. 272, 293.

Section 2511(1)(a)–(d) sets out various ways in which the FWA can be violated, stating:

(1) Except as otherwise specifically provided in this chapter any <u>person</u> who--

> (a) intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication;

> (b) intentionally uses, endeavors to use, or procures any other person to use or endeavor to use any electronic, mechanical, or other device to intercept any oral communication when . . . such device transmits communications by radio, or interferes with the transmission of such communication . . . .

> \* \* \* \*

5

> (c) intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection;
>
> (d) intentionally uses, or endeavors to use, the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection.

18 U.S.C. § 2511(1)(a)–(d) (emphasis added).

Section 2511(3)(a), which was added as part of the amendments made in 1986, states that "a person or entity providing an electronic communication service to the public shall not intentionally divulge the contents of any communication . . . while in transmission on that service to any person or entity other than an addressee or intended recipient of such communication or an agent of such addressee or intended recipient." 18 U.S.C. § 2511(3)(a) (emphasis added).

Plaintiff's complaint appears to allege violations of Section 2511(a)–(d). Plaintiff's complaint, however, does not allege any facts that would constitute a violation of Section 2511(3)(a), the only substantive provision cited above that explicitly prohibits an "entity" from engaging in prohibited conduct.

**2. Suffolk County is Not Liable as an "Entity"**

Suffolk County argues that, as a matter of statutory interpretation, a municipality is not liable as an "entity" under the FWA for the violations of Section 2511(1)(a)–(d) alleged here. The Court agrees.

While the Second Circuit has not addressed this issue, the Sixth and Seventh Circuits are divided on municipal liability for such claims. Compare Seitz v. City of Elgin, 719 F.3d 654, 657 (7th Cir. 2013) (no municipal liability) with Adams v. City of Battle Creek, 250 F.3d 980, 985–86 (6th Cir. 2001). In a recent decision, one district court in the Second Circuit followed Seitz. See Ryder v. Czajka, No. 23-CV-1102, 2025 WL 391179, at *11 (N.D.N.Y. Feb. 4, 2025), appeal filed

6

(2nd Cir., Feb. 20, 2025). District courts from other circuits are divided, but, after the Seitz decision, have more often than not followed Seitz. Compare Adams v. Luzerne Cnty., 36 F. Supp. 3d 511, 524 (M.D. Pa. 2014); Federated Univ. Police Officers' Ass'n v. Regents of Univ. of California, No. SACV1500137, 2015 WL 13273308, at *8 (C.D. Cal. July 29, 2015) with Kemeness v. Worth Cnty., Georgia, 449 F. Supp. 3d 1318, 1325 (M.D. Ga. 2020).

The Court is persuaded by the Seventh Circuit's more robust analysis of the FWA in Seitz and accordingly finds that Suffolk County cannot be held liable as an "entity" for these alleged violations.[1]

The Court acknowledges that in Organizacion JD Ltda. v. U.S. Dep't of Just., 18 F.3d 91, 94 (2d Cir. 1994), the Second Circuit held that a governmental "entity" is subject to liability under Section 2707(a) of the Stored Communications Act ("SCA"). The SCA was enacted in 1986 as part of the Electronic Communications Act of 1986, which also included the 1986 amendments to the FWA noted above. See Seitz, 719 F.3d at 656, 659 (citing Pub. L. No. 99–508, §§ 103, 201, 100 Stat. at 1848, 1853–54, 1860–68). In Seitz, however, the Seventh Circuit persuasively explained why the relevant substantive provisions of the SCA and the FWA are materially different. Id. at 659 (noting that the substantive provision of the SCA—which uses the term "whoever," 18 U.S.C. § 2701—"speaks in much broader terms" than the relevant substantive provisions of the FWA, which refer to a "person"). The Court agrees and concludes that the Second Circuit's decision in Organizacion JD Ltda. is not controlling here.

Suffolk County cannot be held liable as an "entity" for the alleged violations of the FWA here. Plaintiff also advances other arguments, none of which are persuasive.

---

[1] While the Sixth Circuit has not overruled or explicitly limited Adams, the Sixth Circuit recently acknowledged that its decision in Adams "did not expressly consider whether an 'entity' could be liable under the substantive provisions of § 2511(1), which attach only to 'any person.'" B & G Towing, LLC v. City of Detroit, MI, 828 F. App'x 263, 266 n.4 (6th Cir. 2020).

7

### 3. Suffolk County is Not Liable as a "Person" or under *Respondeat Superior*

Plaintiff insists that, even if the Court were follow Seitz's analysis of "entity" liability, he still has a viable claim because, according to Plaintiff, Suffolk County also qualifies as a "person" under the FWA.

The FWA defines a "person" as "any employee, or agent of the United States or any State or political subdivision thereof, and any individual, partnership, association, joint stock company, trust, or corporation." 18 U.S.C. § 2510(6).

Plaintiff contends that Suffolk County qualifies as a "person" under the FWA because the term "person" in 28 U.S.C. § 1983 was interpreted in Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658 (1978), to include municipalities. However, unlike Section 1983, the Wiretap Act specifically defines "person." Accordingly, the Court must focus on the particulars of this specific definition of "person." Monell, and its interpretation of "person" in Section 1983, does not answer that question.

Plaintiff also advances an argument based on the specific actual language of § 2510(6), asserting that Suffolk County qualifies as a "person" because the FWA's definition of "person" includes "corporation[s]" and Suffolk County is technically a "municipal corporation." While the Court assumes that Suffolk County is technically a municipal corporation, see Suffolk Cnty. Charter § C23-11, the Court does not agree that "corporation" in § 2510(6) includes municipal corporations.

One court that was presented with an argument that public corporations qualify as "corporations" under the FWA summarily rejected that argument. See Federated Univ. Police Officers' Ass'n v. Regents of Univ. of California, No. SACV1500137, 2015 WL 13273308, at *7 (C.D. Cal. July 29, 2015) (rejecting argument that the Regents of the University of California could be liable under the FWA because it is a "corporation").

8

Since the plain language of the statutory text does not clearly and unambiguously answer this question, it is appropriate to look to canons of statutory construction. See Cmty. Bank, N.A. v. Riffle, 617 F.3d 171, 176 (2d Cir. 2010).

One relevant canon is the "principle of *noscitur a sociis*—a word is known by the company it keeps," which courts rely on to "'avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words, thus giving unintended breadth to the Acts of Congress.'" Yates v. United States, 574 U.S. 528, 543 (2015) (quoting Gustafson v. Alloyd Co., 513 U.S. 561, 575 (1995)). Here, § 2510(6) lists "corporation" along with "partnership, association, joint stock company, [and] trust"—all of which are private entities. The *noscitur a sociis* canon indicates that, in § 2510(6), "corporation" does not include "municipal corporations." See Clinton, Ark. v. Pilgrim's Pride Corp., 653 F. Supp. 2d 669, 674 (N.D. Tex. 2009) (relying on *noscitur a sociis* canon in concluding that municipal corporations were excluded from the definition of "person" in the Packers & Stockyards Act, 7 U.S.C. § 181, et seq. ("PSA"), which grouped "corporations with individuals, associations, and partnerships," as those are all "private entities") aff'd, 632 F.3d 148 (5th Cir. 2010).

This interpretation is bolstered by the references to "any State or political subdivision thereof" earlier in the definition of "person" in § 2510(6), which further indicate that, in enacting this provision, Congress viewed "political subdivisions" as different than the private entities that are grouped together later in the definition of "person."

Plaintiff relies on City of Lincoln, Neb. v. Ricketts, 297 U.S. 373, 374 (1936), which interpreted the term "corporation" in the Bankruptcy Act to include "municipal corporations." In Ricketts, the Supreme Court stated that "[a] municipal corporation is a corporation in the usual sense of the term," but also indicated that courts must focus on the specific statute at issue in order determine if the statute uses that "term in a more limited sense." Id. The Supreme Court ultimately

9

concluded that this provision of the Bankruptcy Act—which included a broad definition of the "corporation"—covered municipal corporations. Ricketts, however, is ultimately distinguishable and does not answer the question of how the FWA should be interpreted here.

The court in City of Clinton—which also distinguished Ricketts—summarized the particulars of the statute at issue in Ricketts, explaining that:

> In Ricketts, the Supreme Court was tasked with deciding whether a municipal corporation is a person entitled to priority payment of its debt under then section 64b of the Bankruptcy Act. Section 64b defined "person" to include corporations, and section 1a(6) of the Bankruptcy Act defined "corporation" as "all bodies having any of the powers and privileges of private corporations not possessed by individuals or partnerships." The Supreme Court concluded that, taking the term in context, "corporation" included municipal corporations. The Bankruptcy Act's broad definition of "corporation" extended to "all bodies" that have the powers and privileges of private corporations, not solely private corporations. Municipal corporations have such powers and privileges. And in other portions of the Bankruptcy Act, Congress had specifically excluded municipal corporations from the meaning of "corporation" or "person."

City of Clinton, 653 F. Supp. 2d at 673 (citations omitted).

The FWA does not define "corporation" in such broad terms. Ricketts is distinguishable, and the Court concludes that the specific language used in § 2510(6) indicates that "corporation" does not include municipal corporations.[2]

Finally, the Complaint alleges that Suffolk County is liable for violations committed by the Individual Defendants under the doctrine of *respondeat superior*. (Compl. ¶ 56.) Suffolk County argues that, factually, the Complaint fails to plausibly allege *respondeat superior* liability because the individual defendants were acting outside the scope of their employment. However, there is a more fundamental flaw with Plaintiff's theory concerning *respondeat superior* liability. There is no textual basis in the FWA to conclude that a municipal entity such as Suffolk County is liable,

---

[2] The court in City of Clinton similarly found Ricketts distinguishable, stressing that, unlike the Bankruptcy Act at issue Ricketts, the "PSA's use of the term 'person' does not extend to any entity with the powers or privileges of private corporations." City of Clinton, 653 F. Supp. 2d at 673.

10

under *respondeat superior* principles, for violations by its employees of Section 2511(1)(a)–(d). No court that has followed <u>Seitz</u>'s interpretation of municipal "entity" liability has found that *respondeat superior* principles provide an alternative basis to hold municipalities liable for violations of Section 2511(1)(a)–(d). In fact, both <u>Seitz</u> itself and a subsequent district court decision applying <u>Seitz</u> explicitly rejected arguments that governmental entities could be liable based on vicarious liability. <u>Seitz</u>, 719 F.3d at 656 n 4; <u>Doe v. Fed. Democratic Republic of Ethiopia</u>, 189 F. Supp. 3d 6, 15 (D.D.C. 2016) (rejecting vicarious liability theory for alleged violation of Section 2511(1)), <u>aff'd on other grounds</u>, 851 F.3d 7 (D.C. Cir. 2017). Plaintiff's *respondeat superior* theory fails as a matter of law.[3]

In sum, none of Plaintiff's interpretative arguments are persuasive and Plaintiff's FWA claim against Suffolk County must be dismissed.

**C.      The Individual Defendants' Motions to Dismiss**

The Individual Defendants have all moved to dismiss on various grounds. Those motions are denied.

Contrary to the Individual Defendants' arguments. the Complaint alleges plausible FWA claims against them and are sufficient under Federal Rule of Civil Procedure 8. The Court also finds that Plaintiff's FWA claim is not subject to the heightened pleading standards of Federal Rule of Civil Procedure 9.

Sovereign immunity does not apply to Spota and McPartland here because they are being sued in their individual capacities.[4] <u>See</u> <u>Bonaffini v. City Univ. of New York</u>, No. 20-CV-5118, 2021 WL 2895688, at *2 (E.D.N.Y. July 9, 2021) (citing <u>Hafer v. Melo</u>, 502 U.S. 21, 27 (1991)).

---

[3] If a plaintiff alleges that a municipal "entity" violated Section 2511(3)(a)—which prohibits certain conduct by an "entity"—then a court would have to consider to what extent the conduct of the municipality's employees and officials can be imputed to the municipality. However, that question is irrelevant with respect to alleged violations of Section 2511(1)(a)–(d) where there is no "entity" liability.

[4] The Complaint does not specify whether Spota and McPartland are being sued in their official capacity, individual capacity, or both. Plaintiff's opposition brief, however, clarifies that they are being sued in their individual capacities.

11

Their claim of absolute prosecutorial immunity also does not warrant dismissal.

Courts "draw a line between the investigative and administrative functions of prosecutors, which are not protected by absolute immunity, and the advocacy functions of prosecutors, which are so protected." Parkinson v. Cozzolino, 238 F.3d 145, 150 (2d Cir. 2001). This line "might sometimes be difficult to draw." Zahrey v. Coffey, 221 F.3d 342, 347 (2d Cir. 2000). The Supreme Court has suggested that "a prosecutor's conduct prior to the establishment of probable cause should be considered investigative," but has also recognized that certain conduct "even after probable cause exists might" still be considered "investigative." Id. at 347 n. 2 (citing Buckley v. Fitzsimmons, 509 U.S. 259 (1993)).

Procurement and use of a wiretap may qualify as an investigative function that falls outside the scope of absolute immunity. See Lawson v. Abrams, 863 F.2d 260, 263 (2d Cir. 1988) (stating that Powers v. Coe, 728 F.2d 97, 104 (2d Cir. 1984)—which "held that only the qualified immunity defense may be asserted against . . . a claim that he authorized or directed an investigative wiretap"—"reflect[s] the settled law of this circuit"); Liffiton v. Keuker, 850 F.2d 73, 77 (2d Cir. 1988) ("We do not agree that applying to the court for a wiretap warrant is clearly a prosecutorial function. Further factual inquiry is necessary to determine whether the functions [defendants] performed entitle them to absolute immunity."); see Peters v. City of Buffalo, 848 F. Supp. 2d 378, 385 (W.D.N.Y. 2012) ("[O]rchestrating sting operations, authorizing or directing the use of wiretaps, or coercing confidential informant into consenting to a wire are acts that do not enjoy absolute immunity."); see also Price v. Montgomery Cnty., Kentucky, 72 F.4th 711, 719–20 (6th Cir. 2023) ("Conduct that falls outside the cloak of absolute immunity includes instances where the prosecutor's actions are not intimately associated with the judicial process. That could include,

12

for example, investigative efforts to obtain an arrest warrant, authorize wiretaps, or advise the police." (citation omitted)), cert. denied, 144 S. Ct. 2499, 219 L. Ed. 2d 1319 (2024).[5]

Here, the claim of absolute immunity fails because the Court cannot determine, based on the factual allegations in the Complaint, that Spota and McPartland were engaged in a prosecutorial advocacy function, rather than an investigative function, in connection with their procurement and use of the wiretap.[6] Cf. Anilao v. Spota, 27 F.4th 855, 870 (2d Cir. 2022) (stating that district court correctly determined, based on the pleadings, that Spota and subordinate prosecutor "were not entitled to absolute immunity for their conduct during the investigative stage of the prosecution").

The Individual Defendants' qualified immunity claims must also be rejected. The Court cannot—based on the factual allegations in the Complaint concerning the defendants' procurement of a court-approved wiretap based on an alleged false statement—conclude that defendants are entitled to qualified immunity.[7] For similar reasons, the Court cannot conclude, based on the Complaint, that Defendants are entitled to the FWA's statutory "good faith" defense, which applies if the Defendants were relying in "good faith" on a court order approving the wiretap. 18 U.S.C. § 2520(d)(1).

The Individual Defendants also assert that Plaintiff's FWA claim is barred by collateral estoppel based on a jury instruction that this Court gave at Spota's and McPartland's criminal trial

---

[5] Lawson, Liffiton, and Powers were all decided prior to Buckley, 509 U.S. 259. However, the Second Circuit has not questioned the continuing validity of these cases and, even after Buckley, the Ninth Circuit, in Broam v. Bogan, 320 F.3d 1023, 1033 (9th Cir. 2003), approvingly cited Powers and other older wiretap cases suggesting that absolute immunity will not necessarily bar all such claims.

[6] Iacopelli argues that he is also entitled to absolute immunity because he was acting under the directions of the prosecutors. At the present stage of the litigation, this argument necessarily fails because even the prosecutors themselves are not entitled to absolute immunity.

[7] Plaintiff argues that qualified immunity cannot be invoked as a defense to FWA claims. It is unnecessary for the Court to reach this legal question because, even if qualified immunity is potentially available, as a factual matter, the Individual Defendants are not entitled to qualified immunity based on the current record.

13

concerning the legality of the wiretap. That argument is meritless. Plaintiff was not a party to the criminal trial and, as such, would not be collaterally estopped by any of the Court's rulings in that trial.

Finally, all Defendants also moved to dismiss based on the statute of limitations. Defendants assert that the two-year statute of limitations for Plaintiff's claims had elapsed long before December 1, 2023 when the Complaint was filed.

A plaintiff is not required to "affirmatively plead facts" in order to overcome an affirmative defense such as the statute of limitations. Clark, 89 F.4th at 93–94. "Nevertheless, a defendant may raise an affirmative defense in a pre-answer Rule 12(b)(6) motion if the defense appears on the face of the complaint." Id. (citation omitted).

The FWA provides that "[a] civil action under this section may not be commenced later than two years after the date upon which the claimant first has a reasonable opportunity to discover the violation." 18 U.S.C. § 2520(e).

Defendants ask the Court to consider newspaper articles from 2016 discussing the wiretap of Oliva and a federal grand jury's investigation into the legality of the wiretap. Plaintiff is even quoted in some of these articles. Even assuming that the Court can consider these articles on this motion dismiss, the Court cannot definitively conclude, based on those articles and the complaint, that Plaintiff had a "reasonable opportunity to discover the [alleged] violation" prior to December 2, 2021 when the state court vacated Oliva's conviction.[8] The current record does not even include the state court filings from 2021 that led to the vacatur of Oliva's conviction or the state court's December 2021 ruling on the vacatur motion. While the Court denies the instant motion to dismiss,

---

[8] Some defendants also generally reference, without any specific citations, filings and trial testimony from Spota's and McPartland's criminal trial.

14

Court will consider limiting initial discovery to this statute of limitations defense and allowing the filing of an early summary judgment motion on the statute of limitations.[9]

### III.    CONCLUSION

For the reasons stated above, the Court grants Suffolk County's motion to dismiss and denies the Individual Defendants' motions to dismiss. Plaintiff's counsel is directed to: (1) mail a copy of this Order to McPartland, who is proceeding pro se; and (2) file proof of service on ECF.

**SO ORDERED.**

Dated: March 28, 2025
Central Islip, New York

                                              /s/   (JMA)
                                       JOAN M. AZRACK
                                       UNITED STATES DISTRICT JUDGE

---

[9] Spota and Iacopelli request that Plaintiff be required to disclose the filings from Oliva's state court proceeding and that the instant motion be held in abeyance pending that disclosure. The Court believes that targeted discovery and an early summary judgment motion on the statute of limitations is the more appropriate course.